**Electronically Filed
Intermediate Court of Appeals
CAAP-13-0000104
31-OCT-2017
08:49 AM**

NOS. CAAP-13-0000104 and CAAP-13-0000108

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


COMPLAINANT/DISPUTE RESOLUTION CDR.2769.8 AND APPLICATION
    FOR AFTER-THE-FACT STREAM CHANNEL ALTERATION PERMIT
    STREAM DIVERSION WORKS PERMIT AND PETITION TO AMEND
    INSTREAM FLOW STANDARDS (SCAP.2898.8) FOR LESLIE AINA
    WEIGHT/ROBERT SCOTT HENDERSON AND DR. DAVID JUNG/MRS.
    DORA OKAZAKI AINAKO BRANCH STREAM AND AINAKO STREAM,
    HILO, HAWAII


APPEAL FROM THE COMMISSION ON WATER RESOURCE MANAGEMENT
(CASE NO. CCH-HA11-1)


MEMORANDUM OPINION
(By:  Nakamura, Chief Judge, and Fujise and Reifurth, JJ.)

        This appeal involves disputes between neighboring
subdivision residents regarding the origin of, and rights
relating to, the flow of water through their properties.  David
Jung, M.D., Malinee Jung, Dora Okazaki, Ronald Okazaki, Norman
Purves, Maren Hauschidlt-Purves, and Tamae Shindo (collectively,
Complainants) and Leslie Aina Weight and Robert Scott Henderson
(collectively, Applicants) are all residents of and neighbors in
the Ainako Subdivision.  This subdivision consists of property
that was previously owned and subdivided by Hilo Sugar Company.
The Commission on Water Resource Management (Commission) held a
contested case hearing and issued a decision on the disputes
underlying this appeal.

The Ainako Stream runs through the Ainako Subdivision. There is a watercourse that branches from the Ainako Stream, referred to in this case as "Branch Stream 1," and a second geological feature referred to as "Branch 2/Drainage Channel." At the time the Commission held its contested case hearing, Branch Stream 1 was connected to the Ainako Stream through a flood control gate located on the property of Leslie Aina Weight (Weight), and Branch 2/Drainage Channel had no connection with Ainako Stream and was typically dry.

Among other things, the Complainants and the Applicants disputed whether Branch Stream 1 had previously been connected to Ainako Stream at another point further downstream and whether Branch 2/Drainage Channel had ever been connected to Ainako Stream. The Complainants asserted that over time, the flow in Branch Stream 1 and Branch 2/Drainage Channel had been significantly reduced. The Complainants attributed this reduction to the Applicants' and their family members' obstruction of alleged connections between Ainako Stream and Branch Stream 1 and Branch 2/Drainage Channel and to Weight's alleged manipulation of the amount of water flowing into Branch Stream 1 by changing the height of the flood control gate on her property. The Applicants denied that the connections alleged by Complainants ever existed and denied that Weight had been manipulating the height of the flood control gate. The Applicants attributed the reduction in water flow to reduced rainfall and the construction of the Akolea Ditch in the 1980s, which reduced the amount of surface runoff and water entering Ainako Stream above Branch Stream 1.

The Complainants filed a petition with the Commission, seeking to revoke the registration for, and to remove, the flood control gate on the Weight property; to restore the alleged historical connections between Ainako Stream and Branch Stream 1 and Branch 2/Drainage Channel; and to increase the water flow to Branch Stream 1 and Branch 2/Drainage Channel. After holding a

2

contested case hearing, the Commission denied the Complainants' petition.

The Commission ruled that the historical origin for Branch Stream 1 was its present location at the existing flood control gate; that there was no prior connection between Branch Stream 1 and Ainako Stream at another point further downstream as contended by Complainants; and that even if there had been such a prior connection, (1) it was likely that water flowed toward Ainako Stream rather than from Ainako Stream in this connection, and (2) there was no evidence of the flow pattern or amount of water flowing in such connection. The Commission also ruled that Branch 2/Drainage Channel was a drainage channel with its origin on land that had never been a branch of the Ainako Stream. The Commission noted that the Complainants did not own property along Ainako Stream but only along Branch Stream 1 or Branch 2/Drainage Channel and thus did not have riparian rights to use Ainako Stream waters. The Commission also concluded that the Complainants did not have riparian rights to water flowing in Branch Stream 1, which the Commission found was water obtained from Ainako Stream though a man-made diversion or through rain runoff, and that the Complainants did not have riparian rights to water flowing in Branch 2/Drainage Channel, which the Commission found was water from rain runoff. Pursuant to its regulatory authority over stream diversions, the Commission ordered Weight to monitor the amount of water diverted by the flood control gate at the head of Branch Stream 1 on a monthly basis and to submit a report annually. It also required Weight to maintain the height of the flood control gate in a fixed position at five inches.

The Complainants and Intervenor Gary Meltzer (collectively, "Appellants") appeal and Weight cross-appeals from the Commission's Findings of Fact, Conclusions of Law, and Decision and Order" (Decision and Order). On appeal, the Appellants contend that the Commission erred in: (1) determining that the origin of Branch Stream 1 was at its current point of connection to the Ainako Stream, rather than a point further

3

downstream; (2) determining that Branch 2/Drainage Channel was not a branch stream of Ainako Stream; (3) determining that Complainants do not have riparian rights; and (4) failing to revoke Weight's registration for the flood control gate, which Appellants claim was based on Weight's false and misleading statements.

On cross-appeal, Weight contends that the Commission erred in: (1) requiring Weight to conduct monthly monitoring and submit annual reports to the Commission on the amount of water diverted by the flood control gate; and (2) requiring Weight to keep the flood control gate in a fixed position at five inches without permitting her to adjust the gate for purposes of maintenance and repairs or to protect against flooding.

As explained below, we affirm the Commission's Decision and Order.

BACKGROUND

The Ainako Stream originates from springs above Hilo. The stream flows between several residential lots in the Ainako Subdivision, passing under four streets before it terminates in a boggy area about 1.3 miles from its origin.[1] Although Ainako Stream typically flows year round, its flow varies from month to month and year to year.

I.

The dispute underlying this appeal centers around the origin of, and rights relating to, water in Branch Stream 1 and Branch 2/Drainage Channel. At the time of the contested case hearing, the existing configuration and character of Branch Stream 1 and Branch 2/Drainage Channel were as follows:

Branch Stream 1 originates at a flood control gate on the Weight property. As Ainako Stream passes along the east side of the Weight property, some of its water is diverted to a flood control gate and through a culvert to form a second watercourse, referred to as Branch Stream 1. A diversion dam was built across

---

[1] In about 1947, the Hilo Sugar Company established the Ainako Subdivision by subdividing property it owned into residential lots.

half the width of Ainako Stream, which has the effect of raising the level of Ainako Stream so that a portion of its waters flows to the flood control gate. It appears that without the diversion dam, no water would flow from Ainako Stream to the flood control gate, except during times of heavy rain. Exactly when the diversion dam and flood control gate were originally constructed is unknown, but they have been at the same location from at least the 1950s. Evidence suggests that they may have been constructed by Hilo Sugar Company, as the location of the diversion dam and flood control gate correspond to the location of a temporary sugar cane flume, used to transport cane down to the mill, which is shown on a 1924 Hilo Sugar Company field map.

From the flood control gate on the Weight property, Branch Stream 1 flows makai through the Weight property, between the Weight and Henderson properties, then past the Okazaki property, the Shindo property, and finally the Jung property. Branch Stream 1 ends about one-half mile from it origin in the same boggy area as the Ainako Stream. Other than at the flood control gate on the Weight property, there is no connection between the Ainako Stream and Branch Stream 1.

Branch 2/Drainage Channel is located between Ainako Stream and Branch Stream 1. Branch 2/Drainage Channel is typically dry and has water flow only during heavy or prolonged rains. Branch 2/Drainage Channel forms part of the boundary between the Weight and Marsh properties, passes through a culvert under Kokea Street, and terminates after forming the boundary between the Okazaki and Purves properties. At the time of the contested case hearing, there was no connection between Ainako Stream and Branch 2/Drainage Channel.

II.

Complainants claimed that Ainako Stream had previously been connected to Branch Stream 1 at a point downstream of its current connection at the flood control gate on the Weight property, and that Ainako Stream had also previously been connected to Branch 2/Drainage Channel. Complainants' claims

5

were based primarily on a 1947 subdivision map, entitled "File Plan 427," that was filed in June 1947 in conjunction with the creation of the Ainako Subdivision by Hilo Sugar Company.[2/] File Plan 427 depicts a segment connecting Ainako Stream to Branch Stream 1 which attaches to Ainako Stream about 170 feet downstream of the current flood control gate on the Weight property. This segment is referred to as "Branch 1a." File Plan 427 also depicts a "side channel" beginning at the current location of the flood control gate on the Weight property and ending at the point where Branch 1a connects to Branch Stream 1. This side-channel segment follows the path of the current beginning portion of Branch Stream 1 and is referred to as "Branch 1b." File Plan 427 also depicts a solid straight line from Ainako Stream to Branch 2/Drainage Channel.

A.

The Commission rejected Complainants' claim that the historical origin of Branch Stream 1 was Branch 1a, and it determined that the historical origin of Branch Stream 1 was its current origin at Branch 1b. The Commission concluded that the only evidence supporting Complainants' claim that Branch 1a was the origin of Branch Stream 1 was File Plan 427 and that all other evidence showed that Branch 1b was the origin of Branch Stream 1.

In support of its finding that Branch 1b was the origin of Branch Stream 1, the Commission cited: (1) the testimony of several long-time residents and others familiar with Ainako Stream during the 1950s, 1960s, and 1970s that the only connection between Ainako Stream and Branch Stream 1 from at least 1956 was the flood control gate at the current origin of Branch 1b, and that they had never seen a connection at the location of Branch 1a; (2) an aerial photograph taken in 1956,

_____

[2/] The Complainants also relied on a 1954 subdivision map and a 1954 Tax Map Key map. But the evidence indicated that these 1954 maps were based on File Plan 427, and not on any contemporaneous survey.

showing a connection between Ainako Stream and Branch Stream 1 at Branch 1b, but no connection at Branch 1a; (3) a 1954 architectural drawing of the Weight house and property showing a connection between Ainako Stream and Branch Stream 1 at Branch 1b, but not at Branch 1a; (4) testimony by Weight and Robert Scott Henderson (Henderson) that from at least the 1950s, the location of Branch 1a as depicted on File Plan 427 was a grassy lawn with no lateral channels or waterways connecting Ainako Stream with Branch Stream 1; (5) evidence that the location of the purported connection between Ainako Stream and Branch 1a is solid bedrock and "water would have had to run literally uphill" to get over obstructions at that location for water to have flowed from Ainako Stream to Branch Stream 1 through Branch 1a; and (6) evidence that there is a solid, unbroken rock wall along Ainako Stream at the location of the purported connection between Ainako Stream and Branch 1a, which has been in existence since at least 1958.

The Commission further found and concluded that the Branch 1b side-channel and Branch 1a depicted on File Plan 427 could have been part of a single watercourse that originated at the current origin of Branch 1b.[3/]  In other words, even if Branch 1a existed prior to the 1950s, water would have flowed from Ainako Stream into Branch 1b and then down Branch 1b into Branch 1a, and not from Ainako Stream into Branch 1a.  The Commission explained that Branch 1b, rather than Branch 1a, was the more reasonable historical origin of Branch Stream 1 because: (1) Branch 1b is further upstream of Ainako Stream than Branch 1a; (2) where Branch 1a purportedly connects to Ainako Stream is solid bedrock and water would have to run uphill to flow from Ainako Stream to Branch Stream 1 through Branch 1a; and (3) Ainako Stream is four feet below the edge of the rock wall at the

---

[3/] The Commission noted that even if File Plan 427 depicted Branch 1a as a stream route, it did not reveal whether the purported stream was flowing, or man-made versus natural.  File Plan 427 also did not show in what direction the purported stream would be flowing.

7

location of the purported connection between Ainako Stream and Branch 1a.[4]

The Commission concluded that even if there had been a connection between Branch 1a and Ainako Stream in the past, no evidence had been presented as to Branch 1a's stream flow. Without such stream flow evidence, the Commission ruled that Complainants lacked an evidentiary basis for their request to increase the flow in Branch Stream 1.

B.

With respect to Branch 2/Drainage Channel, the Commission found and concluded that: (1) Branch 2/Drainage Channel is a drainage channel, with its origin on land, that has never been physically connected to Ainako Stream; and (2) that water does not usually flow in Branch 2/Drainage Channel, but only flows during periods of rain, when runoff enters it. The Commission found that File Plan 427 did not support the Complainants' claim that Branch 2/Drainage Channel was previously a branch stream of the Ainako Stream. The Commission found that Complainants had misinterpreted a solid straight line on File Plan 427 running from Ainako Stream to Branch 2/Drainage Channel as depicting a stream and showing a connection between the two, when this straight line did not depict a stream, but was a survey chord marked with survey coordinates that was used to designate the boundary between subdivided properties.

In support of its finding that Branch 2/Drainage Channel was a drainage channel, and not a stream, and that it had never been connected to Ainako Stream, the Commission cited: (1) testimony of long-time residents and others familiar with the area that from at least 1958, there had been no connection between Ainako Stream and Branch 2/Drainage Channel; and (2) evidence that Branch 2/Drainage Channel is typically dry and has

---

[4] The Commission also noted that: (4) the culvert after the flood control gate at Branch 1b "is placed onto an unaltered pahoehoe lava surface in a natural low spot through which water would have flowed"; and (5) "without the rock dam in Ainako Stream, there would be no flow in [Branch Stream 1] under average conditions, even with the artificially deepened channel carved into the rock base of the flood control gate[.]"

8

water flow only during heavy or prolonged rains. The Commission noted that the only testimony that Branch 2/Drainage Channel had been a running stream came from the Okazakis, who described it as "slow running." The Commission found that this testimony was consistent with the observations of others that Branch 2/Drainage Channel only flowed during periods of prolonged or heavy rain.

C.

The Commission found that the Complainants did not own property along Ainako Stream but only along Branch Stream 1 or Branch 2/Drainage Channel and thus did not have riparian rights to use Ainako Stream waters. The Commission concluded that the Complainants did not have riparian rights to water flowing in Branch Stream 1 because such water was obtained from Ainako Stream though a man-made diversion or through rain runoff to which riparian rights did not attach. The Commission found that the Complainants' request to remove the flood control gate and divert up to 50 to 100 percent more water from Ainako Stream into Branch Stream 1 for non-riparian uses would expose Weight to the risk of flooding and would adversely affect the riparian rights of residents who lived along Ainako Stream. The Commission also concluded that the Complainants did not have riparian rights to water flowing in Branch 2/Drainage Channel, which the Commission found was water from rain runoff to which riparian rights did not attach.

Pursuant to its regulatory authority over stream diversions, the Commission ordered Weight to monitor the amount of water diverted by the flood control gate at the head of Branch Stream 1 on a monthly basis and to submit a report annually. It also required Weight to maintain the height of the flood control gate in a fixed position at five inches, which was the approximate level that the old gate had been fixed in place for decades.[5]

---

[5] During the contested case hearing, the Applicants presented evidence that the old gate, which Henderson had replaced in 2009, had been fixed and rusted in place and could not be moved for decades.

III.

The procedural history of this case is as follows:

Between April and July 2010, Applicants Weight and Henderson: (1) submitted a late Registration of Stream Diversion Works and Declaration of Water Use for a rock dam diversion and flood control gate on Ainako Stream on the Weight property; (2) filed a second and separate late Registration of Stream Diversion Works and Declaration of Water Use for ornamental ponds A and B on Branch Stream 1; (3) filed a Stream Channel Alteration Permit application for ornamental pond C on Branch Stream 1; and (4) requested that the registration result in the issuance of certificates of use. In July 2010, the Commission staff: (1) determined that the rock dam diversion and flood control gate on Ainako Stream on the Weight property were developed and in use before the 1987 enactment of the State Water Code, were registered as existing Stream Diversion Works, and did not require a Stream Diversion Works Permit; and (2) the diversion of Ainako Stream at Branch Stream 1 and the instream flow were considered a late Declaration of Existing Stream Diversion Works and Declaration of Water Use. The Commission staff also determined that ornamental pond A pre-dated the Water Code and was considered a late Declaration of Existing Water Use, but that ornamental ponds B and C were constructed within the past two years and could not be considered Declarations of Existing Water Use for registration purposes.

In December 2010, Complainants filed a Complaint/Dispute Resolution (Petition) with the Commission against Applicant Weight, seeking to: (1) revoke the registration for the flood control gate on the Weight property; (2) remove the flood control gate and restore the alleged historical Branch 1a connection between Ainako Stream and Branch Stream 1; (3) restore the alleged historical connection between Ainako Stream and Branch 2/Drainage Channel; and (4) restore free surface water flow to Branch Stream 1 and Branch 2/Drainage Channel.

10

In May 2011, Applicants submitted an application for an after-the-fact Stream Channel Alteration Permit, Stream Diversion Works Permit, and Petition to Amend Instream Flow Standard with respect to Branch Stream 1, ornamental ponds B and C along Branch Stream 1, construction of a rock retaining wall along Branch Stream 1, replacement of a bridge over Branch Stream 1, and the patching of leaks in Branch Stream 1.

The Commission decided to hold a contested case hearing. Commissioner Lawrence Miike was appointed as the hearings officer. Prior to the contested case hearing, the following persons were admitted as parties: Applicants Weight and Henderson; Complainants David Jung, Malinee Jung, Dora Okazaki, Ronald Okazaki, Norman Purves, Maren Hauschidlt-Purves, and Tamae Shindo; and Intervenors Meltzer, Fred Koehnen, Carolyn Koehnen, Margaret Oda, Bret Marsh, Martin Eisgruber, and Cheri Eisgruber.[6] After the contested case hearing, the Hearings Officer issued his "Proposed Findings of Fact, Conclusions of Law, and Decision and Order" (Proposed Decision and Order).

On January 23, 2013, the Commission issued its Findings of Fact, Conclusions of Law, and Decision and Order (Decision and Order), which largely adopted the Proposed Decision and Order. In its Decision and Order, the Commission denied the Complainants' Petition: (1) to revoke the registration for the flood control gate, to remove the flood control gate, and to restore the alleged historical connection at Branch 1a between Ainako Stream and Branch Stream 1; (2) to restore the alleged historical connection between Ainako Stream and Branch 2/Drainage Channel; and (3) to restore free surface water flow to Branch Stream 1 and Branch 2/Drainage Channel. The Commission further ruled that Applicants were in violation of Hawaii Revised

---

[6] Before the start of the contested case hearing, Margaret Oda, Martin Eisgruber, and Cheri Eisgruber withdrew their applications to intervene. Intervenor Bret Marsh also withdrew as a party, but testified at the contested case hearing as a witness for Applicant Weight.

11

Statutes (HRS) § 174C-71(3)(A) (2011)[1/] and fined them $700 for: (1) patching leaks in Branch Stream 1; (2) constructing a rock retaining wall along Branch Stream 1; and (3) constructing ornamental ponds B and C without obtaining a Stream Channel Alteration Permit and a Stream Diversion Works Permit from the Commission. The Commission, however, approved Applicants' after-the-fact Stream Channel Alteration Permit and Stream Diversion Works Permit for patching the leaks, constructing the rock wall, and constructing ponds B and C. The approval of these permits was conditioned on Applicants permanently maintaining the flood control gate at five inches, its approximate historical level. The Commission also required Applicants to monitor the amount of water diverted by the flood control gate on a monthly basis and to submit a report annually to the Commission. The Commission ruled that Applicants "were not required to submit the petition to amend the interim instream flow standard for [Branch Stream 1] (and Ainako Stream), because there have been no change in the standards since their adoption in October 1988."

DISCUSSION

I.

We first address the issues raised by Appellants in their appeal. Appellants contend that the Commission erred in: (1) determining that the origin of Branch Stream 1 was at its current point of connection to the Ainako Stream at Branch 1b, rather than a point further downstream at Branch 1a; (2) determining that Branch 2/Drainage Channel was a drainage channel and not a branch stream of Ainako Stream; (3) determining that Complainants do not have riparian rights; and (4) failing to revoke Weight's registration for the flood control gate, which

---

[1/] HRS § 174C-71(3)(A) provides:

(A) The commission shall require persons to obtain a permit from the commission prior to undertaking a stream channel alteration; provided that routine streambed and drainageway maintenance activities and maintenance of existing facilities are exempt from obtaining a permit[.]

12

Appellants claim was based on Weight's false and misleading statements.

At the time relevant to this case, the State Water Code, HRS Chapter 174C, provided that "[j]udicial review of rules and orders of the [C]ommission under this chapter shall be governed by chapter 91." HRS § 174C-12 (2011). HRS § 91-14(g) (2012) sets forth the standards of review for agency decisions and provided:

> Upon review of the record the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:
>
> (1) In violation of constitutional or statutory provisions; or
>
> (2) In excess of the statutory authority or jurisdiction of the agency; or
>
> (3) Made upon unlawful procedure; or
>
> (4) Affected by other error of law; or
>
> (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
>
> (6) Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Findings of fact are reviewable under the clearly erroneous standard. In re 'Iao Ground Water Management Area High-Level Source Water Use Permit Applications, 128 Hawai'i 228, 238, 287 P.3d 129, 139 (2012). Conclusions of law "are freely reviewable to determine if the agency's decision was in violation of constitutional or statutory provisions, in excess of statutory authority or jurisdiction of agency, or affected by other error of law." Id. A conclusion of law that presents mixed questions of fact and law is reviewed under the clearly erroneous standard. Id. When mixed questions of fact and law are presented, "an appellate court must give deference to the agency's expertise and experience in the particular field," and "[t]he court should not substitute its own judgment for that of the agency." Id. A

finding of fact or a mixed determination of fact and law is clearly erroneous "when (1) the record lacks substantial evidence to support the finding or determination, or (2) despite substantial evidence to support the finding or determination, the appellate court is left with the definite and firm conviction that a mistake has been made." Id. (block quote format and citation omitted).

Appellate review of agency decisions, such as the Commission's decision in this case, is "qualified by the principle that the agency's decision carries a presumption of validity, and appellant has the heavy burden of making a convincing showing that the decision is invalid because it is unjust and unreasonable in its consequences." Id. (internal quotation marks and citation omitted). "Additionally, courts decline to consider the weight of the evidence to ascertain whether it weighs in favor of the administrative findings, or to review the agency's findings of fact by passing upon the credibility of witnesses or conflicts in testimony, especially the findings of an expert agency dealing with a specialized field." In re Hawaiian Electric Company, 81 Hawaiʻi 459, 465, 918 P.2d 561, 567 (1996). "[I]t is the province of the trier of fact, and not an appellate court, to determine the credibility of witnesses and to assess the weight and effect of the evidence," and those determinations, generally, will not be disturbed on appeal. State v. Aplaca, 96 Hawaiʻi 17, 23, 25 P.3d 792, 798 (2001); In re Estate of Herbert, 90 Hawaiʻi 443, 454, 979 P.2d 39, 50 (1999).

A.

Appellants contend that the Commission erred in determining that the origin of Branch Stream 1 was at its current point of connection to the Ainako Stream at Branch 1b, rather than a point further downstream at Branch 1a. We disagree. Appellants' contention is based on their arguments that the Commission erred in assessing the credibility of the witnesses and the weight of the evidence in making this determination.

14

Applying the applicable standard of review, we conclude that the Commission did not clearly err in determining that the origin of Branch Stream 1 was at its current point of connection to the Ainako Stream at Branch 1b, and not at Branch 1a.

Applicants presented significant evidence that from at least 1956, the only connection between Ainako Stream and Branch Stream 1 was at the flood control gate on the Weight property at the head of Branch 1b. Weight's family bought her property in about 1954, and they moved into a house built on the property in 1956. Weight testified that the flood control gate at the head of Branch 1b was already in place when she moved onto the property in 1956. The location of the flood control gate is consistent with the location of a temporary sugar cane flume, installed to transport sugar cane down to the mill, shown in a 1924 Hilo Sugar Company field map. Weight testified that at the time she moved onto the property, the only connection between Ainako Stream and Branch Stream 1 was through the flood control gate on her property. Weight further testified that there was no connection between Ainako Stream and Branch Stream 1 at a location further downstream at Branch 1a, as claimed by Complainants, as there was a solid rock wall along Ainako Stream and a grassy lawn between Ainako Stream and Branch Stream 1 in this area.

Weight's testimony was corroborated by other long-time residents of the Ainako Subdivision and people familiar with the Ainako Stream, who testified that based on their personal observations and recollections going back to the 1960s and 1970s, the only connection between Ainako Stream and Branch Stream 1 was at the flood control gate at the head of Branch 1b. Applicants also submitted: (1) photographs of the Weight property from 1956 and 1958 showing that at the purported location of Branch 1a, there was a solid rock wall along Ainako Stream and a grassy lawn between Ainako Stream and Branch Stream 1; (2) a 1954 architectural drawing of the Weight house and property showing a connection between Ainako Stream and Branch Stream 1 at Branch

15

1b, but no connection at Branch 1a; (3) an aerial photograph taken in 1956, which was obtained from the archives of C. Brewer and Company, a successor to Hilo Sugar Company, showing a connection between Ainako Stream and Branch Stream 1 at Branch 1b, but no connection at Branch 1a.[8]

Complainants mainly relied on File Plan 427, a 1947 subdivision map which depicted a stream route connecting Ainako Stream to Branch Stream 1 at Branch 1a.[9] However, the Commission found that the markings on File Plan 427 did not show that Branch 1a was the origin of Branch Stream 1. The markings on File Plan 427 did not show whether the purported stream at Branch 1a was flowing, or whether it was man-made versus natural. Nor did File Plan 427 show in what direction any water in Branch 1a was flowing. The Commission cited evidence that where Branch 1a connects to Ainako Stream on File Plan 427, there is solid bedrock and that water would have to run literally uphill to flow from Ainako Stream to Branch Stream 1 through Branch 1a; Ainako Stream is four feet below the edge of the rock wall, which runs along Ainako Stream, at the location of the purported connection between Ainako Stream and Branch 1a; and

---

[8] Appellants claim that the Hearings Officer erred in admitting the aerial photograph at the contested case hearing because it was disclosed by Weight after the deadline to submit exhibits. We disagree. The Commission's rules grant the Hearings Officer authority to control the conduct of the hearing and to "exercise discretion in the admission or rejection of evidence." Hawai'i Administrative Rules (HAR) § 13-167-59(a) (1988). The record indicates that the aerial photograph was disclosed late because it had recently been discovered by a witness from C. Brewer and Company, while he was archiving the company's aerial photographs. We conclude that the Hearings Officer did not abuse his discretion in admitting the aerial photograph. Appellants do not specify how they were prejudiced by the late disclosure or what they could have done if the photograph was disclosed earlier. In any event, any error in the Hearings Officer's admission of the aerial photograph was harmless, as the aerial photograph was cumulative of other evidence showing the lack of connection between Ainako Stream and Branch Stream 1 at Branch 1a.

[9] The Complainants also relied on the testimony of Dora Okazaki who claimed that in the 1990's, she saw a connection between Ainako Stream and Branch Stream 1 at Branch 1a, which she later observed had been covered up by landscaping. However, her testimony was inconsistent and lacking in detail and was refuted by the testimony of several witness and photographic exhibits which showed that from at least the 1950's, there was no connection between Ainako Stream and Branch Stream 1 at Branch 1a.

Branch 1b is further upstream of Ainako Stream than Branch 1a. Based on this and other evidence, the Commission concluded that Branch 1b and Branch 1a could have been part of a single watercourse, which originated at the current origin of Branch 1b. In other words, that water would have flowed from Ainako Stream into Branch 1b and then down Branch 1b into Branch 1a. Based on the evidence presented, we conclude that the Commission did not clearly err in finding that the more reasonable historical origin for Branch Stream 1 was its current point of connection to Ainako Stream at the flood control gate at the head of Branch 1b, rather than a connection to Ainako Stream at Branch 1a.[10]

B.

Appellants' contention that the Commission erred in determining that Branch 2/Drainage Channel was a drainage channel and not a branch stream of Ainako Stream is without merit. The Commission found that Branch 2/Drainage Channel was a drainage channel, with its origin on land, that has never been physically connected to Ainako Stream. We conclude that the Commission did not clearly err in making this determination.

Applicants presented significant evidence to support the Commission's determination. This included: (1) testimony of long-time residents and people familiar with the Ainako Stream who testified that based on their personal observations and recollections dating back to the 1950s, there was no connection between Ainako Stream and Branch 2/Drainage Channel; (2) evidence that Branch 2/Drainage Channel was a drainage ditch that was nearly always dry and only has water flow during heavy or prolonged rains; and (3) a 1954 architectural drawing of the Weight house and property, photographs of the Weight property from 1956 and 1958, and a 1956 aerial photograph that all showed

---

[10] The Commission further concluded that even if there had been a historical connection between Ainako Stream and Branch Stream 1 through Branch 1a, this would not entitle Complainants to the relief they requested, which was to increase the flow from Ainako Stream into Branch Stream 1. The Commission noted that Complainants had not presented any evidence of the historical stream flow in Branch 1a, such as its flow pattern (perennial, intermittent, or drainage) or the amount of the flow. Therefore, there was no evidentiary basis to support or quantify their request for increased flow.

there was no connection between Ainako Stream and Branch 2/Drainage Channel.

Complainants again relied primarily on File Plan 427 to support their claim that Branch 2/Drainage Channel was a branch stream of Ainako Stream. However, the Commission found that Complainants' reliance on File Plan 427 was misplaced because a straight line marking on File Plan 427, which Complainants interpreted as depicting a direct connection between Ainako Stream and Branch 2/Drainage Channel, was in fact a survey chord, which marked the boundary between two lots. The Commission's reading of the straight-line marking on File Plan 427 as a survey chord, and not a stream route, was supported by the testimony of a map expert, the fact that survey coordinates were written next to the line, and the fact that the line itself was straight, which is not the normal course of a natural stream. We conclude that the Commission did not err in its interpretation of the straight-line marking on File Plan 427 as a survey chord and not a stream route. As interpreted by the Commission, File Plan 427 actually supports the Applicants' position, rather than Complainants' position, because it indicates that there was no connection between Ainako Stream and Branch 2/Drainage Channel when the Ainako Subdivision was established.

C.

Appellants argue that the Commission erred in concluding that Complainants had no riparian rights with respect to the flows in Branch Stream 1 and Branch 2/Drainage Channel.[11]

---

[11] We note that Intervenor Meltzer, whose application to be a party to the contested case hearing stated objectives similar to the Complainants, is one of the Appellants. Unlike the other Appellants, Meltzer did not own property along either Branch Stream 1 or Branch 2/Drainage Channel, and thus he could not assert riparian rights with respect to Branch Stream 1 or Branch 2/Drainage Channel. Meltzer owned property along Ainako Stream, but he did not submit written testimony for, testify at, or participate in the contested case hearing, and he does not appear to have asserted riparian rights with respect to Ainako Stream. The Commission found that based on Meltzer's stated objectives in applying to be a party, he would have supported the transport of additional Ainako Stream waters to Branch Stream 1 and Branch 2/Drainage Channel. The Commission, however, determined that Meltzer's rights as a riparian landowner with respect to Ainako Stream did not include the right to transport Ainako Stream waters to non-riparian lands, a determination that Appellants do not challenge on appeal.

Appellants' claim that Complainants have riparian rights with respect to Branch Stream 1 and Branch 2/Drainage Channel is founded on Appellants' contentions that Branch 1a was the natural and historical origin for Branch Stream 1 and that Branch 2/Drainage Channel was connected to, and was a branch stream of, Ainako Stream. However, we have upheld the findings of the Commission rejecting both of these contentions, and therefore, these contentions do not support Appellants' claim that Complainants have riparian rights.

Appellants also claim that Complainants would be entitled to riparian rights with respect to Branch Stream 1 if Branch Stream 1 was a natural branch stream of Ainako Stream through Branch 1b. On appeal, Appellants challenge the Commission's determination that Branch Stream 1 is not a natural branch stream of Ainako Stream through Branch 1b because without the diversion dam before the flood control gate, no water would flow from Ainako Stream to Branch Stream 1 through Branch 1b, when Ainako Stream is at its typical water level. Applicants, however, presented substantial evidence that the diversion dam raised the level of Ainako Stream at a point above the flood control gate, and that without the diversion dam, no water would flow from Ainako Stream into Branch Stream 1 through Branch 1b under normal conditions.[12] We conclude that the Commission did not clearly err in finding that without the diversion dam, water would not flow from Ainako Stream into Branch Stream 1 under normal conditions.

The Commission also found that the relief sought by Complainants, which was to increase the flow from Ainako Stream into Branch Stream 1 and Branch 2/Drainage Channel, would

---

[12] The Applicants also presented evidence that the diversion from Ainako Stream into Branch Stream 1 through Branch 1b may have been constructed by Hilo Sugar Company for a temporary sugar cane flume long before the Ainako Subdivision was established. Applicants introduced a 1924 Hilo Sugar Company field map which showed a temporary sugar cane flume that began in the current location of the diversion dam and flood control gate.

negatively affect the interests of landowners Koehnen, Marsh, and Weight. The Commission found that these landowners owned property along Ainako Stream and thus had riparian rights to Ainako Stream waters.

The Complainants sought to increase the flow into Branch Stream 1 by restoring the alleged historical connection between Ainako Stream and Branch Stream 1 at Branch 1a and by removing the flood control gate at the head of Branch 1b. The Complainants sought to increase the flow into Branch 2/Drainage Channel by restoring its alleged historical connection to Ainako Stream.

Koehnen, Marsh, and Weight opposed the changes requested by Complainants. Koehnen, who relied on water flow from the Ainako Stream to run a hydroelectric plant he built along the stream the 1980s, opposed any additional diversion from Ainako Stream that would reduce its flow. Marsh opposed the modification of the flood control levees along the Ainako Stream that would be required to connect Ainako Stream to Branch Stream 1 through Branch 1a and to connect Ainako Stream to Branch 2/Drainage Channel. He feared that modification of the flood control levees along Ainako Stream would expose his property to extreme flooding and erosion. Weight opposed the removal of the flood control gate because she feared it would expose her property to flooding during heavy rains. The Commission found that without the flood control gate, Weight and other property owners downstream on Branch Stream 1, including the Complainants, are at risk for flooding.

Based on the foregoing, we conclude that Complainants have failed to demonstrate that the Commission erred in determining that they lacked riparian rights with respect to the flows in Branch Stream 1 and Branch 2/Drainage Channel and in denying their request for increased flow into Branch Stream 1 and Branch 2/Drainage Channel.

D.

Appellants contend that the Commission erred in failing to revoke Weight's registration for the flood control gate, which Appellants claim was based on Weight's false and misleading statements. Appellants' claim that Weight's registration for the flood control gate should be revoked because she made false and misleading statements in obtaining the registration was thoroughly litigated at the contested case hearing. After evaluating the conflicting evidence presented by the parties, the Commission denied Complainants' Petition to revoke Weight's registration for the flood control gate. We conclude that Appellants have failed to provide a valid basis for overturning the Commission's decision on this issue.

II.

On cross-appeal, Weight contends that the Commission erred in: (1) requiring Weight to conduct monthly monitoring and to submit annual reports to the Commission on the amount of water diverted by the flood control gate; and (2) requiring Weight to keep the flood control gate in a fixed position at five inches without permitting her to adjust the gate for purposes of maintenance and repairs or to protect against flooding. We affirm the Commission's decisions challenged by Weight.

A.

The Commission did not err in requiring Weight to monitor and report the amount of water diverted from Ainako Stream into Branch Stream 1 by the flood control gate. The Commission registered the rock dam diversion and flood control gate at the head of Branch 1b, which predated the State Water Code, as an existing Stream Diversion Works. Hawai'i Administrative Rules (HAR) § 13-168-7 (1988) provides, in relevant part:

> (a) The owner or operator of any well or stream diversion works from which water is being used <u>shall provide and maintain an approved meter or other appropriate device or means for measuring and reporting total water usage on a monthly (calendar or work schedule) basis</u>. . . .

21

(b) The owner or operator of any well or stream diversion works or battery of such water sources shall file a report of total water usage on a regular monthly (calendar or work schedule) basis to the commission on forms provided by the commission on or before the end of the month following the month for which water usage is to be reported. . . .

(c) At the discretion of the commission, requirements for measuring and reporting monthly water usage may be lessened, modified, or exempted for owners or operators of small, individual wells or stream diversion works. The lessening, modification, or exemption of such requirements shall be approved, disapproved, or otherwise decided by the commission on a case-by-case basis.

(Emphasis added).

The Commission was authorized under HAR § 13-168-7 to impose the monitoring and reporting requirements for water diverted by the flood control gate and flowing into Branch Stream 1. Weight contends that the monitoring and reporting requirements were unduly onerous and unnecessary. However, Weight had been monitoring the water flow from the flood control gate into Branch Stream 1 for two years prior to the contested case hearing, and she does not demonstrate that these requirements are unduly onerous.

The current flood control gate is adjustable, and a significant point of controversy between the Complainants and Applicants was the Complainants' allegation that Weight had been manipulating the height of the flood control gate in a manner that adversely affected the Complainants. In light of this controversy, it was reasonable for the Commission to impose the monitoring and reporting requirements on Weight. The monitoring and reporting requirements were also necessary to ensure that Weight complies with the condition of her after-the-fact Stream Channel Alteration Permit and Diversion Works Permit that requires her to maintain the flood control gate at a fixed level of five inches. Under these circumstances, we conclude that the Commission did not abuse its discretion in imposing the monitoring and reporting requirements on Weight.

B.

The Proposed Decision and Order by the Hearings Officer imposed the condition, which was adopted by the Commission in its Decision and Order, that "the adjustable flood control gate at the diversion on Ainako Stream into [Branch Stream 1] shall be set at five inches, to approximate the opening of the old gate in its fixed position of three and one-half inches with a jagged bottom."[13] However, in its Decision and Order, the Commission did not adopt the Hearings Officer's additional proposal that "Applicants may adjust the gate for maintenance and repairs of their properties in and along [Branch Stream 1], and to lower the gate in periods of heavy rain if flows from Ainako Stream threaten to exacerbate flooding from runoff from [Branch Stream 1's] banks." Weight contends that the Commission erred in failing to adopt this aspect of the Hearings Officer's proposal. We disagree.

As noted, a significant point of controversy between the Complainants and Applicants was the Complainants' allegation that Weight had been manipulating the height of the flood control gate to suit her purposes and to their detriment. Complainants sought the removal of the flood control gate in its entirety and vigorously opposed granting Weight any discretion to control the height of the gate.

In support of her application to register the flood control gate as an existing Stream Diversion Works and in opposing Complainants' Petition, Weight represented that the current adjustable flood control gate was installed and its level was set to replicate the historic flood control gate, which had been stuck at the same level for decades. Weight represented that the historic flood control gate may have existed in or before 1924 as a device to control water flowing into Hilo Sugar Company's temporary flume systems; that the historic flood

_____

[13] In its Decision and Order, the Commission approved the Applicants' after-the-fact Stream Channel Alteration Permit and Diversion Works Permit subject to this condition.

23

control gate had been frozen in place for decades, since at least the 1960s, at a level of 3.5 to 4 inches, but also with a jagged or rusted bottom making the gap larger; that the new adjustable flood control gate installed in 2009 was set with a five-inch gap to approximate the fixed setting of the historic gate; that she sought to maintain the status quo with respect to the proportion of water that had been diverted from Ainako Stream into Branch Stream 1 by the historic flood control gate; and that she would negotiate any alteration in the proportion of water diverted into Branch Stream 1 with the Commission and other property owners along Ainako Stream and Branch Stream 1. Applicants also represented that with the flood control gate set at its historical gap, the Branch Stream 1 channel fills to nearly an overflowing level during periods of high storm flow, "but does not create any conditions conducive to flooding hazzard."

In addition, despite Weight's representation that she never changed the height of the flood control gate, Complainants presented evidence at the contested case hearing that the height of the adjustable flood control gate had been changed, and Weight subsequently admitted doing so on a few occasions. Intervenors Koehnen and Marsh, who own property along Ainako Stream and generally supported the Applicants' positions, indicated that they favored keeping the flood control gate at its historical level. As noted by the Commission, the flood control gate was registered as an existing Stream Diversion Works, and if Weight wishes to maintain the flood control gate as an adjustable gate, she would need to obtain a Stream Diversion Works Permit. Thus, it appears that Weight could seek a permit that would give her the authority to adjust the height of the flood control gate.

Under these circumstances, we cannot say that the Commission abused its discretion in fixing the height of the flood control gate at five inches and in failing to adopt the Hearings Officer's proposal giving Weight authority to adjust the height of the gate for certain purposes.

24

CONCLUSION

Based on the foregoing, we affirm the Commission's Decision and Order.

DATED: Honolulu, Hawai'i, October 31, 2017.

On the briefs:

John S. Carroll
and
Christopher A. Dias
for David Jung, M.D., Malinee
Jung, Dora Okazaki, Ronald
Okazaki, Norman Purves, Maren
Hauschidlt-Purves, Tamae Shindo
and Gary Meltzer,
Appellants/Cross-Appellees.

Paul Alston
Thomas E.Bush
Mei-Fei Kuo
(Alston Hunt Floyd & Ing)
for Leslie Aina Weight,
Appellee/Cross-Appellant.

Linda L.W. Chow
Cindy Y. Young
Deputy Attorneys General
for Commission on Water
Resource Management,
Appellee.

*Craig H. Nakamura*

Chief Judge

Associate Judge

Associate Judge